UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. |
| MAURICE L. AREL, | )<br>)<br>) |
| Defendant. | )<br>)<br>) |

# COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges:

## SUMMARY

1. Between at least 1998 and 2002 (the "relevant period"), Defendant Maurice L. Arel ("Arel" or "Defendant"), then the president, chief executive officer, and a director of Pennichuck Corporation ("Pennichuck" or the "Company"), a publicly-traded water company based in Merrimack, New Hampshire, caused Pennichuck to make materially false and misleading statements and omissions concerning the Company's real estate operations in its periodic filings with the Securities and Exchange Commission ("Commission").

2. During the relevant period, Arel oversaw Pennichuck's participation, through a wholly-owned subsidiary, in six separate real estate joint ventures with a New Hampshire real estate developer (hereinafter referred to as "the Developer"). These joint ventures generated revenue to Pennichuck by, among other things, developing, leasing, and selling land owned by Pennichuck.

3. Arel caused Pennichuck to falsely state in a Commission filing that an executive

officer of the company purchased a home from one of the Company's joint ventures on the same terms that were available to any independent third party.  In fact, Arel, the Pennichuck officer referred to in the filing, obtained favorable terms on his home purchase from the joint venture that were worth approximately $70,000 and that were not available to other purchasers.

4. Arel also caused Pennichuck's failure to disclose in its Commission filings that the Company's real estate joint ventures repeatedly hired a company controlled by Arel's son to perform landscaping work, and paid a total of approximately $800,000 to that company during the relevant period.

4. In addition, during the relevant period, Arel caused Pennichuck's inaccurate and incomplete disclosures in public filings concerning the extent of its real estate transactions with the Developer because Pennichuck's public filings failed to disclose that the Developer was its partner on six joint ventures, obtained multiple contracts and loans from Pennichuck, and provided Arel with favorable terms on his home purchase and Arel's son with landscaping contracts worth approximately $800,000.  Based on Pennichuck's Commission filings, investors would not have been able to determine the extent of the Company's relationship with the Developer, or whether Pennichuck's numerous dealings with the Developer were arms-length transactions.

5. Through the conduct alleged in this Complaint, Arel violated Sections 10(b), 13(b)(5), and 14(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§78j(b), 78m(b)(5), and 78n(a)] and Rules 10b-5, 13b2-2, and 14a-9 thereunder [17 C.F.R. §§240.10b-5, 240.13b2-2, and 240.14a-9], and aided and abetted violations of Sections 13(a) and 14(a) of the Exchange Act [78m(a) and 78n(a)], and Rules 13a-1, 13a-13, and 12b-20 thereunder

[17 C.F.R. §§240.13a-1, 240.13a-13, and 240.12b-20].

6. Unless enjoined and restrained, there is a reasonable likelihood defendant Arel will engage in further violations of the federal securities laws. Accordingly, the Commission seeks the entry of a permanent injunction prohibiting further violations of the relevant provisions of the federal securities laws. The Commission also seeks an officer and director bar against Arel because Arel used his position as chief executive officer to obtain valuable personal benefits from a joint venture of the Company and knowingly provided false and misleading information about the transaction to Pennichuck's shareholders through the Company's public filings.

## JURISDICTION

7. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§78u(d), 78u(e), 78aa]. Many of the acts and practices complained of herein occurred within the District of New Hampshire.

8. The Commission seeks a permanent injunction pursuant to Section 21(d)(1) of the Exchange Act [15 U.S.C. §78u(d)(1)]. The Commission also seeks imposition of an officer and director bar pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. §78u(d)(2)].

9. In connection with the conduct alleged in this Complaint, defendant directly or indirectly made use of the mails or the means or instruments of transportation or communication in interstate commerce.

## DEFENDANT AND RELATED PARTY

### Defendant

10. **Maurice L. Arel**, age 67, is a resident of Nashua, New Hampshire, and was president, CEO, and a director of Pennichuck from October 1984 until April 2, 2003, when he was forced to terminate his employment with the Company, effective May 2, 2003.

### Related Party

11. **Pennichuck Corporation** is a New Hampshire corporation based in Merrimack, New Hampshire, with approximately $97 million in total assets as of December 31, 2003. Pennichuck's principal operating subsidiaries are regulated public utilities that provide drinking water to customers in southern and central New Hampshire. During the relevant period, Pennichuck's wholly-owned subsidiary, The Southwood Corporation ("Southwood"), directly or through joint ventures with real estate developers, developed, leased, and sold land holdings that Pennichuck formerly owned. During the relevant period, Pennichuck's stock was registered with the Commission pursuant to Section 12(g) of the Exchange Act and traded on the NASDAQ National Market System.

## STATEMENT OF FACTS

### Background

12. During the relevant period, Pennichuck conducted its real estate operations through its wholly-owned subsidiary, Southwood. Beginning in the 1980s, Pennichuck transferred to Southwood approximately 1,088 acres of undeveloped land in southern New Hampshire that Pennichuck had owned for decades, and which had a very low cost basis. Arel had primary responsibility for Pennichuck's real estate operations, and he devoted the majority of

his time to the real estate portion of Pennichuck's business.

13.     From 1996 to 2002, Arel recommended to Pennichuck's board of directors, and the board approved, formation of six separate real estate joint ventures between Pennichuck and the Developer. Southwood was a 50% owner in each of the joint ventures with the Developer (the "Joint Ventures"). The Joint Ventures produced significant revenue for Southwood and the Developer. Between 1996 and 2002, Southwood obtained revenue of approximately $3.6 million from three residential Joint Ventures involving the Developer. Since 1999, Southwood and the Developer also have developed three commercial office buildings which have provided revenues to Southwood totaling approximately $370,000.

**Arel's False Representations Caused Pennichuck to Make False**
**Disclosures in its Form 10-KSB and a Proxy Statement**

14.     In 1998, Arel purchased land and a custom-built home in Nashua, New Hampshire from one of Pennichuck's Joint Ventures for $339,600. In connection with the purchase, Arel knowingly obtained from the Joint Venture at least $70,000 worth of benefits that were not available to others who purchased homes in the same real estate development from the same Joint Venture.

15.     First, Arel obtained his home at cost, meaning that he did not pay the Joint Venture the standard mark-up on construction costs of approximately 10% paid by other purchasers in the same development. That benefit was worth approximately $30,000. Second, Arel obtained a $10,000 discount off the cost of the home, resulting in a $10,000 benefit to Arel. Third, Arel did not pay the standard real estate commission of 6% that other purchasers paid. That benefit was worth approximately $20,000. Fourth, Arel did not pay a lot premium for one of the largest and most desirable lots in the development. Other purchasers paid lot premiums of

between $7,000 and $12,000. Fifth, unlike other purchasers, Arel reserved that lot without providing any down payment. Sixth, Arel was allowed to select a custom design for his home and negotiate multiple change orders during the construction while other purchasers chose from a few pre-selected home designs. Finally, unlike other purchasers, Arel was allowed to contract directly with his son for landscaping work on the property, rather than paying the Joint Venture a mark-up for landscaping. In total, those benefits to Arel were worth at least $70,000.

16. Despite the special benefits Arel obtained in connection with his home purchase, the notes to the financial statements reported in Pennichuck's Form 10-KSB for the fiscal year ended December 31, 1998, which was filed on March 26, 1999, contained the following statement:

> During 1998, one of the residential joint venture partnerships sold land and a home to an executive officer of the Company. The terms of that sale were the same as the terms which would be given to any independent third party purchaser.

That statement was false because the special terms obtained by Arel, described above, were not available to other purchasers. The Company's filing contained this false statement because, as described below, Arel made false representations concerning his home purchase to the Company's chief financial officer ("CFO"), who prepared the filing.

17. Arel knew he received special benefits in connection with his purchase of a home from the joint venture. Nonetheless, in late 1998, Arel falsely informed Pennichuck's CFO that he obtained no special deal in connection with his home purchase from the Company's Joint Venture. In addition, when the CFO was preparing the Company's Form 10-KSB for 1998, the CFO informed Arel that his home purchase would have to be disclosed, and that the CFO planned to state in the public filing that it was an arms-length transaction. Arel failed to correct

the CFO's misunderstanding.  Prior to filing, Arel reviewed and approved the proposed disclosure about his home purchase without making any correction.  As a result, the Company's Form 10-KSB for 1998, filed with the Commission on March 26, 1999, contained the false statement that Arel's home purchase from the Company's Joint Venture was on the same terms given other purchasers.

18.     Pennichuck's false statement concerning Arel's home purchase remained uncorrected until Pennichuck filed its Form 10-K for the fiscal year ended December 31, 2002, on March 31, 2003, disclosing that, "The Audit Committee has obtained information indicating that Mr. Arel's 1998 home purchase in fact was not on terms that would have been available then to any independent third-party purchaser."

19.     Arel also misled the Company's independent auditors regarding his home purchase.  Arel signed a January 26, 1999 management representation letter to the Company's independent auditor in connection with the audit of the consolidated financial statements of Pennichuck as of December 31, 1998, stating, among other things, that as of December 31, 1998 and for the three years ending December 31, 1998, "There has been no: a) fraud involving management or employees who have significant roles in internal control," and "[t]he following have been properly recorded or disclosed in the financial statements: a) Related-party transactions, including sales, purchases, loans, transfers, leasing arrangements and guarantees (written or oral), and amounts received from or payable to related parties."  Arel failed to disclose in that letter to Pennichuck's independent auditor that he obtained undisclosed benefits from his home purchase transaction with Pennichuck's Joint Venture.

20.     In addition, Pennichuck's proxy statement, filed with the Commission on March

18, 1999, set forth a materially incomplete and inaccurate statement concerning Arel's compensation for 1998.  The proxy statement contained a chart of Arel's compensation during 1998 that included Arel's salary of $159,327, a bonus of $50,000, and identified $42,293 under the category "all other compensation."  A footnote explained that the amount of "all other compensation" included: (1) the cost to Pennichuck for Arel's life insurance policy; (2) contributions to Arel's elective savings plan; and (3) contributions made pursuant to a deferred compensation agreement with Arel.  The proxy statement's chart of Arel's compensation omitted the benefits totaling at least $70,000 that Arel obtained in 1998 in connection with his home purchase from one of the Company's Joint Ventures.

**Arel Caused Pennichuck's Failure to Disclose Transactions Involving Arel's Son**

21.     Between at least 1998 and 2002, Pennichuck's Joint Ventures repeatedly hired a company controlled by Arel's son to perform landscaping work for the Joint Ventures.  The Joint Ventures paid approximately $800,000 for the work during the relevant period.  However, Pennichuck's public filings during that period, signed by Arel, contain no reference to transactions between its Joint Ventures and Arel's son.

22.     Arel knew that Pennichuck's Joint Ventures hired his son to perform a significant amount of landscaping work.  On at least one occasion since 1998, the Developer discussed with Arel problems with the quality of Arel's son's work at the largest of the Company's residential Joint Venture projects.  In addition, Arel attended a meeting of homeowners of that residential Joint Venture at which the quality of his son's landscaping work was discussed.  Nonetheless, between 1998 and 2002, Pennichuck failed to disclose in any public filing that its Joint Venture partner repeatedly hired the CEO's son.

23. During the relevant period, as the Company's president and chief executive officer, Arel signed Pennichuck's quarterly and annual filings with the Commission, knowing or with reckless disregard that the filings contained materially false statements and omitted to make statements necessary to make the statements made in the filings not misleading.

**Arel Participated in Pennichuck's Failure to Adequately
Disclose the Extent of Its Relationship with the Developer**

24. Under Arel's supervision, between 1996 and 2002, Pennichuck engaged in multiple transactions with the Developer relating to the Joint Ventures. Pennichuck awarded the Developer at least $23 million in construction contracts for the Joint Venture projects without using a competitive bidding process. Pennichuck also financed construction and development loans to the Joint Ventures totaling approximately $3.3 million between 1996 and 1999, consisting of approximately $1.25 million in interest-free loans and an additional $2.05 million in loans with interest. Pennichuck also conveyed land to the Joint Ventures without obtaining independent appraisals of the value of the land.

25. During the relevant period, the Company's quarterly and annual public filings, all signed by Arel, repeatedly failed to inform shareholders that multiple real estate transactions disclosed in the same filing involved a single developer. For example, in its Form 10-KSB for the fiscal year ended December 31, 1999, filed with the Commission on March 22, 2000, and signed by Arel, Pennichuck failed to disclose that a single developer (the Developer) was involved in each of the following: a) two residential joint ventures from which it earned $714,000 from its 50% interest; b) the sale of one-half interest in a land parcel to a local developer, from which the Company recorded a pretax gain of $72,000; and c) the company's 50%-owned venture, HECOP I, owned a 39,000 square-foot office building which was partially

occupied by a local developer.

26. In addition, the Company's Form 10-KSB for the fiscal year ended December 31, 2000, filed with the Commission on March 28, 2001, and signed by Arel, reported that Southwood was: a) a 50% partner in two joint ventures that built and owned separate office buildings; b) a 50% partner in an 87-unit residential condominium joint venture; and c) a 50% partner in another smaller residential development. Pennichuck failed to disclose that the same developer (the Developer) was its partner in each transaction.

27. Further, Pennichuck reported in its Form 10-K for the fiscal year ended December 31, 2001, filed with the Commission on March 29, 2002, and signed by Arel, that commercial properties owned by its Joint Ventures were subject to mortgage notes totaling $9.6 million, and that Pennichuck and its Joint Venture partner had each provided the bank with guarantees of the notes. Again, Pennichuck failed to disclose that the Developer was its partner in those commercial ventures.

28. Throughout the relevant period, Pennichuck's quarterly and annual filings failed to disclose that a single developer, the Developer, was its partner in the Joint Ventures that provided material benefits to both Arel and Arel's son.

## FIRST CLAIM FOR RELIEF
### Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

29. The Commission repeats and incorporates by reference the allegations in paragraphs 1-28 of this Complaint as if set forth fully herein.

30. By reason of the foregoing, between at least January 1998 and December 2002, Defendant directly or indirectly, acting intentionally, knowingly or recklessly, by the use of means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale

of securities: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated as a fraud or deceit upon certain persons, in violation of .Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## SECOND CLAIM FOR RELIEF
### Violation of Section 13(b)(5) of the Exchange Act and Rule 13b2-2 Thereunder

31. The Commission repeats and incorporates by reference the allegations in paragraphs 1-30 of this Complaint as if set forth fully herein.

32. By reason of the foregoing, between at least 1998 and 2002, Defendant, while serving as an officer and director of Pennichuck, knowingly circumvented or knowingly failed to implement a system of internal accounting controls or knowingly falsified a book, record, or account made and kept by Pennichuck pursuant to Section 13(b)(2) of the Exchange Act in violation of Section 13(b)(5) of the Exchange Act [15 U.S.C. §78m(b)(5)].

33. By reason of the foregoing, between at least 1998 and 2002, Defendant, while serving as an officer and director of Pennichuck, directly or indirectly, made or caused to be made a materially false or misleading statement, or omitted to state or caused another person to omit to state a material fact necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading to an accountant in connection with: (a) an audit or examination of the financial statements of the issuer required to be made pursuant to Section 13 of the Exchange Act; or (b) the preparation or filing of any document or report required to be filed with the Commission pursuant to Section 13 of the Exchange Act or otherwise

in violation of Rule 13b2-2 [17 C.F.R. §240.13b2-2], promulgated pursuant to Section 13(b) of the Exchange Act [15 U.S.C. §78m(b)(5)].

## THIRD CLAIM FOR RELIEF
### Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Thereunder

34. The Commission repeats and incorporates by reference the allegations in paragraphs 1-33 of this Complaint as if set forth fully herein.

35. By reason of the foregoing, between at least December 1998 and April 1999, Defendant directly or indirectly, acting intentionally, knowingly or recklessly, by the use of the means or instrumentalities of interstate commerce or of the mails solicited or permitted use of his name to solicit a proxy or consent or authorization in respect of a non-exempt security registered pursuant to Section 12 of the Securities Exchange Act of 1934 from which a material statement was omitted, or which contained a statement that, at the time and in the light of the circumstances in which it was made, was false and misleading with respect to a material fact, and there was a likelihood that such omission or representation would influence stockholder votes in violation of Section 14(a) of the Exchange Act [15 U.S.C. §78n(a)] and Rule 14a-9 thereunder [17 C.F.R. §240.14a-9].

## FOURTH CLAIM FOR RELIEF
### Aiding and Abetting Pennichuck's Violations of Section 13(a) of the Exchange Act and Rules 13a-1, 13a-13, and 12b-20 Thereunder

36. The Commission repeats and incorporates by reference the allegations in paragraphs 1-35 of the Complaint as if set forth fully herein.

37. Between at least 1998 and 2002, Pennichuck filed with the Commission materially false and misleading periodic reports, and periodic reports that failed to include such further information as was necessary to make the required statements in those reports, in the light of the

circumstances under which they were made, not misleading.

38. Between at least 1998 and 2002, Defendant knowingly or recklessly provided substantial assistance to Pennichuck's filing with the Commission of materially false and misleading periodic reports, and periodic reports that failed to include such further information as was necessary to make the required statements in those reports, in the light of the circumstances under which they were made, not misleading.

39. By reason of the foregoing, Defendant aided and abetted Pennichuck's violation of Section 13(a) of the Exchange Act [15 U.S.C. §§78m(a) and 78(t)(e)] and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §240.12b-20, §240.13a-1, and §240.13a-13].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court issue a Final Judgment:

A. Permanently restraining and enjoining Defendant and each of his agents, servants, employees and attorneys, and those persons in active concert or participation with them and each of them from violating, directly or indirectly:

   1. Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 C.F.R. §220.10b-5];

   2. Section 13(b)(5) of the Exchange Act [15 U.S.C. §78m(b)(5)] and Rule 13b2-2 thereunder [17 C.F.R. §240.13b2-2];

   3. Section 14(a) of the Exchange Act [15 U.S.C. §78n(a)] and Rule 14a-9 thereunder [17 C.F.R. §240.14a-9];

   4. Section 13(a) of the Exchange Act [15 U.S.C. §§ 78m(a) and Rules 12b-20, 13a-1, and 13a-13 thereunder [17 C.F.R. §240.12b-20, §240.13a-1, and §240.13a-13];

B. Prohibiting Defendant from acting as an officer or director of any issuer that has a

class of securities registered pursuant to Section 12 of the Exchange Act or that is required to file reports pursuant to Section 15(d) of the Exchange Act; and

      C.     Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

      D.     Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted,

_____
Sandra J. Bailey (Mass. Bar. No. 600038)

Attorney for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
73 Tremont Street, Suite 600
Boston, MA  02108
617.573.8906 (phone)
617.424.5940 (fax)
Baileysa@sec.gov

Dated: December 16, 2004